

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-1791-11

**ANGELA DODD HAMAL, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S AND APPELLANT'S
### PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE FORT WORTH COURT OF APPEALS
### WISE COUNTY

KELLER, P.J., delivered the opinion of the Court in which PRICE, KEASLER, HERVEY, COCHRAN, and ALCALÁ, JJ., joined. WOMACK, J., filed a dissenting opinion in which MEYERS, J., joined. JOHNSON, J., concurred.

A DPS trooper stopped appellant for speeding. When the trooper asked appellant whether she had ever been in trouble for anything, she answered "no." This case involves a motion to suppress evidence that was seized because, among other things, a criminal history check revealed that that answer was inaccurate. The case also involves the meaning of "disputed fact issue" in the context of an Article 38.23 jury instruction. We conclude that the court of appeals correctly decided the suppression question but incorrectly decided the jury instruction issue. Consequently, we reverse

the court of appeals's judgment.

## I. BACKGROUND

### A. The Incident

On September 25, 2008, at 10:05 p.m., Department of Public Safety Trooper David Riggs stopped appellant's car for traveling 79 miles per hour in a 65 mile-per-hour zone. The entire incident was recorded on video. When Trooper Riggs approached the car, he noticed that appellant was nervous, her hands were shaking, and she was looking down into a purse or bag. He asked appellant to get out of the car and then asked her several questions, including, "You ever been in trouble for anything?" Appellant answered, "No."[1] Trooper Riggs told appellant that he was going to issue a citation for speeding.

Trooper Riggs went back to his patrol car to call dispatch to check appellant's criminal history. The dispatcher told the trooper that appellant had nine arrests, including four arrests for possession of a controlled substance, with the most recent being seven months earlier, in February of 2008. When the trooper approached appellant again, he asked her if she had illegal weapons or drugs in her car, and she responded, "No." He asked for consent to search the car, which she refused to give. Trooper Riggs indicated that there would be a delay because he was having trouble with his ticket printer, and he returned to his patrol car.

---

[1] Appellant contends that Trooper Riggs asked her a compound question: "You ever been in trouble for anything, nothing illegal in the car or nothing?" She further contends that she answered "no" to that single question. The video shows that the questioning at issue was either a rapid succession of two questions or a compound question as appellant claims. But the video also shows that appellant answered "no" twice—the first time after "You ever been in trouble for anything" and the second time after "nothing illegal in the car or nothing." (The second time she said, "No, no, no.") So, if the questioning at issue was a compound question, appellant separately answered both parts of the question.

He then called for a drug dog and returned to tell appellant that he had done so. He explained to her that he was calling for the dog because she seemed nervous and had lied to him. When she asked him what she had lied about, he said that she had lied about not having been in any trouble. Appellant replied that she had said that she was not in any trouble right now; she acknowledged that she had been arrested before and had a past, claiming that it was a long time ago. She also said that she did not know specifically what he had been asking, whether it was that she had been in trouble "recently or two years ago or five years ago."

A drug dog later arrived and alerted on appellant's car. A search of the car revealed a cannister containing a glass pipe and methamphetamine.

## B. Trial

Appellant filed a motion to suppress the evidence seized from her car. The trial judge denied the motion without issuing findings of fact.[2] Appellant also requested an Article 38.23 jury instruction on the legality of the search. The trial judge denied that request. Appellant was subsequently convicted and sentenced to imprisonment for thirty-five years.

## C. Appeal

On appeal, appellant contended that the trial judge erred in denying her motion to suppress and in refusing to give an Article 38.23 jury instruction.

### 1. *Motion to Suppress*

With respect to the motion to suppress, appellant did not challenge Trooper Riggs's initial decision to stop her for speeding. Rather, she argued that he lacked reasonable suspicion to continue detaining her for a canine sniff once he had concluded his speeding investigation. The court of

---

[2] Neither party requested findings.

appeals rejected this claim.[3]  The appellate court reasoned that the trial judge could conclude that Trooper Riggs had reasonable suspicion to continue detaining Hamal "based on his observation of her nervousness when stopped, his belief that she had misrepresented that she had never been arrested when, in fact, she had nine prior arrests, including four drug related arrests, and her lengthy criminal history, including several (and one very recent) drug related arrests."[4]

### 2. *Article 38.23 Jury Instruction*

The court of appeals sustained appellant's jury-instruction claim.[5]  The court concluded that there was a disputed issue of fact regarding whether Trooper Riggs was reasonable in believing that Hamal correctly heard his question and understood it as asking whether she had ever been arrested.[6] The court of appeals characterized Trooper Riggs's question as "vaguely and broadly worded—using the term 'in trouble' instead of 'arrested' or 'convicted,'"[7] and the court noted appellant's statements on the video suggesting she misunderstood what Trooper Riggs was asking.

The court of appeals relied upon *Madden v. State*[8] in support of its conclusion, pointing to language in that decision that approved of an Article 38.23 jury instruction regarding the disputed fact of speeding.[9]  Regarding the present case, the court of appeals said that the factual issue for the

---

[3]  *Hamal v. State*, 352 S.W.3d 835, 843-50 (Tex. App.–Fort Worth 2011).

[4]  *Id.* at 850.

[5]  *Id.* at 850-54.

[6]  *Id.* at 851.

[7]  *Id.*

[8]  242 S.W.3d 504 (Tex. Crim. App. 2007).

[9]  *Hamal*, 352 S.W.3d at 851-52.

jury was not whether Hamal misunderstood Trooper Riggs's question, but whether Trooper Riggs was reasonable in believing that Hamal had heard and understood what he was asking and had lied about having ever been arrested.[10] The court of appeals believed that this fact issue was similar to the disputed fact issue of speeding in *Madden*.[11]

On the basis of its jury-instruction holding, the court of appeals reversed the conviction and remanded the case for a new trial.[12] The State filed a petition for discretionary review from that holding. Appellant subsequently filed a cross-petition that complained about the court of appeals's motion-to-suppress holding.

## II. ANALYSIS

### A. Reasonable Suspicion

To conduct a traffic stop in compliance with the Fourth Amendment,[13] an officer must have "reasonable suspicion."[14] Reasonable suspicion exists "when an officer is aware of 'specfic articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'"[15] The reasonable suspicion standard is wholly objective; the subjective intent of the

---

[10] *Id.* at 852.

[11] *Id.*

[12] *Id.* at 854.

[13] U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .").

[14] *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011).

[15] *Id.*

officer conducting the investigation is irrelevant.[16]  The standard requires only "some minimal level of objective justification" for the stop.[17]   Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to *de novo* review.[18]

### B. Jury Instruction

Article 38.23 provides that evidence obtained in violation of the Constitution or laws of the United States or Texas may not be admitted in a criminal case.[19]   The statute also provides that a jury instruction should be submitted if a fact issue is raised about whether such a violation has occurred.[20]  The jury instruction requires the jury to disregard evidence that it finds was obtained in violation of the United States or Texas Constitution or laws.[21]  To be entitled to an Article 38.23 jury instruction, three predicates must be met: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue

---

[16]  *Id.*

[17]  *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010).

[18]  *State v. Mendoza*, 365 S.W.3d 666, 669-70 (Tex. Crim. App. 2012) (quoting *Ornelas v. United States*, 517 U.S. 690, 696, 699 (1996)).

[19]  TEX. CODE CRIM. PROC. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

[20]  *Id.* ("In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.").

[21]  *Id.*

must be material to the lawfulness of the challenged conduct.[22]

No one disputes that Trooper Riggs had reasonable suspicion to stop appellant for a traffic violation. Appellant's claim is that a fact issue was raised regarding whether Trooper Riggs had reasonable suspicion to prolong the detention for the purpose of getting a drug dog to the scene.

As the court of appeals concluded, the factual issue in dispute is not whether appellant misunderstood the trooper's question. But neither is it whether the trooper was reasonable in believing that appellant understood the question and then lied to him. An officer's subjective belief is irrelevant to reasonable suspicion, so it does not matter what the trooper actually believed. Nor is the issue even whether a hypothetical reasonable police officer would believe that the suspect understood the question. The inquiry is whether a reasonable police officer would believe that the suspect *might* be lying. If a false answer to a particular question would suggest a suspect's involvement in criminal activity, then a possibly false answer can help to establish reasonable suspicion.

The real question in this case is whether there was any factual dispute about what information Trooper Riggs received before and during the stop. The answer to that question is that there was no factual dispute. There was no dispute in the testimony about what the video depicts. There was no conflict in the evidence regarding what appellant and Trooper Riggs said and did, and it was uncontroverted that appellant was nervous.

In *Madden*, by contrast, there was a factual dispute regarding what information the officer received before the stop. The officer testified that he had clocked the defendant's vehicle at 61

---

[22] *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008). *See also Spence v. State*, 325 S.W.3d 646, 653-54 (Tex. Crim. App. 2010) (proper placement of a license plate was an issue of law not fact, and factual dispute about where car was parked was not material).

m.p.h. in a 55 m.p.h. zone.[23]  On the patrol-car video recording, the defendant stated that he was driving 55 m.p.h.[24]  The defendant's statement was some evidence that the police officer was not telling the truth in saying that he clocked the defendant's speed at 61 m.p.h.[25]  If the police officer had not in fact clocked the defendant's vehicle as speeding, then he would not have had reasonable suspicion to conduct a traffic stop.[26]  But there was no dispute in the present case about what Trooper Riggs did, said, saw, or heard.  We conclude that the court of appeals erred in holding that appellant was entitled to an Article 38.23 jury instruction.

### C. Motion to Suppress

Appellant contends that "[o]nce Trooper Riggs told Appellant he was going to write her a citation . . . he had reached the point where he had enough time to effectuate the purpose of the stop."  She also contends that her nervousness at the scene and her prior criminal history are not alone enough to establish reasonable suspicion to prolong the stop.  She further contends that Trooper Riggs's question about whether she had been in any trouble was an inartful, compound question and that it is "impossible for her to know which sub-question the Appellant was addressing when she answered 'no.'"

An officer may check a driver's criminal history so long as doing so does not unduly prolong the stop.[27]  When Trooper Riggs told appellant that he was going to write a citation, he had not yet

---

[23]  *Madden*, 242 S.W.3d at 506.

[24]  *Id.* at 511.

[25]  *See id.* ("appellant's speed was a contested fact").

[26]  *Id.*

[27]  *Kothe v. State*, 152 S.W.3d 54, 64-65 & n.43 (Tex. Crim. App. 2004).

run a criminal history check. He did so almost immediately afterwards, and the criminal history was obtained within minutes.

Although nervousness alone is not sufficient to establish reasonable suspicion for an investigative detention,[28] it can do so in combination with other factors.[29] Likewise, a prior criminal record does not by itself establish reasonable suspicion but is a factor that may be considered.[30] Deception regarding one's own criminal record has also been recognized as a factor that can contribute to reasonable suspicion.[31]

We disagree with appellant's contention that it was impossible to know which "sub-question" appellant answered when she was asked if she had ever been in trouble. As noted earlier in this opinion, appellant separately answered both "sub-questions."[32] After the criminal history check, Trooper Riggs had the following information that we think was sufficient, when viewed as a whole, to establish reasonable suspicion:

1. Appellant was traveling late at night.

2. She had exceeded the speed limit.

---

[28] *St. George v. State*, 237 S.W.3d 720, 726 (Tex. Crim. App. 2007).

[29] *Neal v. State*, 256 S.W.3d 264, 281-82 (Tex. Crim. App. 2008); *Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002).

[30] *See United States v. Mathurin*, 561 F.3d 170, 178-79 (3ᵈ Cir. 2009); *United States v. Powell*, 666 F.3d 180, 188 (4th Cir. 2011); *United States v. Jackson*, 300 F.3d 740, 746 (7th Cir. 2002); *United States v. Poulack*, 236 F.3d 932, 936 (8th Cir. 2001); *United States v. Davis*, 636 F.3d 1281, 1291 (10th Cir. 2011).

[31] *United States v. Gill*, 513 F.3d 836, 844 (8th Cir. 2008); *United States v. McRae*, 81 F.3d 1528, 1536 & n.7 (10th Cir. 1996) .

[32] *See* this opinion, footnote 1.

3. She was nervous, with hands shaking.

4. She had a prior criminal record.

5. This record included arrests for drug offenses.

6. One of the drug arrests was recent, approximately seven months before the stop.

7. She responded, "No," when asked whether she had ever been in trouble before.

Although appellant contends that her subsequent statement to the trooper that she had misunderstood his question raised a fact issue entitling her to a jury instruction, she does not contend that this statement had any effect on the trial court's motion-to-suppress ruling with respect to reasonable suspicion. We agree with the State that such a statement could be viewed as self-serving. The statement not only fails to raise a fact issue but it also fails to negate reasonable suspicion under a *de novo* review, which we apply in the motion to suppress context to the circumstances observed by Trooper Riggs.[33] Moreover, appellant's subsequent statements actually reinforced the existence of reasonable suspicion because she falsely stated that her arrests were "a long time ago."

We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Delivered: September 12, 2012
Publish

---

[33] *See* this opinion, footnote 18.