Opinion filed July 17, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00076-CR

_____

## IKE ANTYON BRODNEX, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR38804**

## M E M O R A N D U M   O P I N I O N

Appellant, Ike Antyon Brodnex, was charged with the offenses of tampering with physical evidence and possession of a controlled substance. He pleaded "not guilty" to the tampering charge and "guilty" to the possession charge. After a bench trial, the trial court acquitted him of the tampering offense but found him guilty of the possession offense. The trial court sentenced him to confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of

twenty years. In a single issue, Appellant challenges the trial court's denial of his pretrial motion to suppress. We affirm.

*Background Facts*

At 2:00 a.m. on June 7, 2011, Officer Zachary Chesworth of the Midland Police Department observed a male and a female leaving the Delux Inn in Midland on foot. He testified that the area around the hotel is known for narcotic activity. Officer Chesworth approached the two individuals and asked them what they were doing and their names. When Appellant identified himself, Officer Chesworth placed him in handcuffs and escorted him to the front of his patrol car. The officer additionally asked Appellant, "Didn't you just get picked up?" to which Appellant replied, "Hell no."

Officer Chesworth testified that he placed Appellant in handcuffs for the officer's safety for the following reason: "[B]ased on my training and experience as a police officer at the city of Midland, I knew that [Appellant] is a known criminal in the city of Midland."[1] Officer Chesworth also cited the time of day and location of the encounter as a reason for placing Appellant in handcuffs "and the fact that there was two individuals that were contacted and only me, and also because I wasn't sure where my nearest backup unit was." Officer Chesworth testified that Appellant was not under arrest at this point.

After escorting Appellant and the female to the front of his patrol car, Officer Chesworth started a pat-down search for weapons on Appellant. The video from Officer Chesworth's police car reveals that, while lifting the shirttail of Appellant's shirt and patting down the exterior of his front pants pockets, Officer Chesworth asked Appellant, "Ike, you got anything on you?" to which Appellant appeared to repy "uh-uh." Officer Chesworth sought clarification from Appellant

---

[1]At the beginning of the punishment phase, Appellant pleaded "true" to three prior convictions for burglary of a habitation. The State additionally offered evidence of several other criminal convictions for Appellant, including a conviction for assault.

2

by asking him, "No?" Appellant did not disagree with the officer's interpretation of his response. Officer Chesworth then asked Appellant, "Mind if I check?" to which Appellant appeared to reply "uh-uh" again. In reliance upon Appellant's apparent verbal consent, Officer Chesworth continued his search by looking inside of Appellant's pants pockets and around the waistband of Appellant's pants. Approximately one minute after beginning his search of Appellant, Officer Chesworth found "a plastic cigar tube protruding from the top of [Appellant's] butt crack and his waistband." Officer Chesworth testified that the cigar tube contained what appeared to be several rocks of crack cocaine.

*Analysis*

In his sole issue, Appellant contends that the trial court erred in denying his pretrial motion to suppress evidence. He initially argues that Officer Chesworth did not have sufficient grounds to "come into contact" with Appellant. He additionally contends that Officer Chesworth's discovery of the cigar tube was the product of an excessive pat-down search.

A trial court's ruling on a suppression motion is reviewed on appeal for abuse of discretion, with almost complete deference being given to its determination of historical facts, especially if those are based on an assessment of credibility and demeanor. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013); *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Regardless of whether the trial court granted or denied the motion, appellate courts view the evidence in the light most favorable to the ruling. *Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013); *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). We review de novo a trial court's application of the law of search and seizure to the facts. *Wade*, 422 S.W.3d at 667; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We will uphold the trial court's ruling if it is reasonably grounded in the record and correct on any theory of law

3

applicable to the case. *Wade*, 422 S.W.3d at 667; *Valtierra*, 310 S.W.3d at 447–48. When the trial court does not issue findings of fact, we imply findings that support the trial court's ruling if the evidence supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006).

There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause. *Wade*, 422 S.W.3d at 667; *Woodard*, 341 S.W.3d at 410–11 (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968); *Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975)).

Appellant contends that Officer Chesworth needed reasonable suspicion that criminal activity was afoot in order to initiate contact with Appellant. We disagree. A consensual encounter "takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers." *Crain*, 315 S.W.3d at 49. In this regard, police officers are as free as any other citizen to approach citizens to ask for information or cooperation. *Wade*, 422 S.W.3d at 667; *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Such consensual encounters may be uncomfortable for a citizen, but they are not Fourth Amendment seizures. *Wade*, 422 S.W.3d at 667; *Garcia-Cantu*, 253 S.W.3d at 241. As the Supreme Court noted in *Florida v. Royer*, 460 U.S. 491, 497 (1983):

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by

offering in evidence in a criminal prosecution his voluntary answers to such questions.

Officer Chesworth initiated contact with Appellant by approaching him as he walked along a street in a public place. Under the authorities cited above, the officer's initial contact with Appellant did not implicate Fourth Amendment protections. Accordingly, Officer Chesworth was not required to have reasonable suspicion in order to approach Appellant and ask him questions.

Officer Chesworth's encounter with Appellant quickly escalated to an investigative detention when he handcuffed Appellant after Appellant identified himself. *See State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011) ("An encounter is no longer consensual when an officer, through physical force or a showing of authority, has restrained a citizen's liberty."). As noted previously, investigative detentions must be supported by a reasonable suspicion of criminal activity. *Wade*, 422 S.W.3d at 667–68.

A police officer has reasonable suspicion for a detention if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the detained person is, has been, or soon will be engaged in criminal activity. *Id.* at 668; *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This is an objective standard that disregards the actual subjective intent of the officer and looks, instead, to whether there was an objectively justifiable basis for the detention. *Wade*, 422 S.W.3d at 668; *Derichsweiler*, 348 S.W.3d at 914. The standard also looks to the totality of the circumstances; individual circumstances may seem innocent enough in isolation, but if the circumstances combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Wade*, 422 S.W.3d at 668; *Derichsweiler*, 348 S.W.3d at 914. The standard requires only "some minimal level of objective justification" for the stop. *Foster v. State*, 326 S.W.3d 609, 614

(Tex. Crim. App. 2010). Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to de novo review. *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012).

Almost immediately upon contacting Appellant, Officer Chesworth determined that Appellant was a "known criminal." He additionally cited the area's narcotic activity and the time of day as reasons why he detained Appellant by placing handcuffs on him. Individually, these facts do not establish reasonable suspicion for an investigative detention. *Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012) (prior criminal record); *Crain*, 315 S.W.3d at 53 (time of day and level of criminal activity in an area). However, the Court of Criminal Appeals recognized in *Hamal*[2] and *Crain* that the three factors cited by Officer Chesworth are factors that may be considered in determining the existence of reasonable suspicion. *Hamal*, 390 S.W.3d at 308; *Crain*, 315 S.W.3d at 53. The applicable standard requires us to look at the totality of the circumstances to determine if Officer Chesworth had an objectively justifiable basis for the detention. When these factors are considered together, they provided Officer Chesworth with an objective basis for concluding that criminal activity was afoot.

Appellant contends that Officer Chesworth's discovery of the cigar tube occurred as a result of an excessive pat-down search after he was detained. We disagree. If an officer is justified in believing that a person whose suspicious behavior he is investigating is armed, he may frisk that person to determine if the person is, in fact, carrying a weapon and, if so, to neutralize the threat of physical harm. *Terry*, 392 U.S. at 24; *Wade*, 422 S.W.3d at 669. The purpose of a *Terry* frisk is not to discover evidence of a crime, but to permit an officer to pursue his

---

[2]The court in *Hamal* recognized "[d]eception regarding one's own criminal record" as another factor supporting a determination of reasonable suspicion. 390 S.W.3d at 308. Although not cited by Officer Chesworth at the suppression hearing, his question to Appellant of "[d]idn't you just get picked up?" indicated that he believed Appellant had recently been picked up and that Appellant was deceptive by not answering "yes."

investigation without fear of violence. *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000); *see Terry*, 392 U.S. at 29. "The sole justification of the search . . . is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29. Furthermore, an officer may place a suspect in handcuffs for purposes of protecting and ensuring the officer's safety before performing a *Terry* pat-down search of the suspect when reasonably necessary given the circumstances of the investigative detention. *See Rhodes v. State*, 945 S.W.2d 115, 117–18 (Tex. Crim. App. 1997).

Appellant's contention of an excessive pat-down search ignores the fact that Officer Chesworth sought and obtained consent from Appellant to search his person at the outset of his pat-down search. Consent to search is one of the specific and "well-established exceptions to the constitutional requirements of both a warrant and probable cause." *Carmouche*, 10 S.W.3d at 331; *see Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Appellant asserts that he did not consent to the search. We defer to the trial court's implied finding that Appellant consented to the search since that determination relies heavily upon the credibility of Officer Chesworth and Appellant. Our review of the video of the encounter supports the trial court's implied finding that Appellant consented to the search. In this regard, Officer Chesworth's search of Appellant proceeded for approximately one minute prior to the discovery of the cigar tube without Appellant ever telling the officer that he did not consent to the search. Furthermore, Appellant has not presented a claim that his consent was coerced. As a result of Appellant's consent to the search of his person, Officer Chesworth was not restricted by the limits of a weapons pat-down in searching Appellant.

Finally, Appellant makes the following statement in his brief: "It is of great concern that the officer was attempting to secure the consent of the Appellant while reaching inside of his pockets." Our review of the the video of the encounter does not support Appellant's contention because Officer Chesworth was feeling on the outside of Appellant's pants pockets when he obtained Appellant's consent. Appellant's sole issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


July 17, 2014

Do not publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.