

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0705-11

**CHRISTINA JEAN MILLER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### KERR COUNTY

**KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined.**

The sheriff's deputies received a report of yelling, screaming, and the sounds of objects being thrown in an apartment. When they approached the front door, they heard crashing noises, loud music, and a person yelling. The person who answered the door was extremely distraught and highly intoxicated. The deputies informed this person of the disturbance report, and they were invited in. The person was upset because a dating companion was seeing other people. When asked, the person said that the dating companion was not home and refused to divulge the dating companion's name. The deputies were informed that children were sleeping in another room. After the deputies obtained the current adult occupant's own identification, they were told to leave. The deputies insisted upon

staying long enough to conduct a warrant check.

If the person who had answered the door had been a man, would we have expected the deputies to leave? Or would we have expected the deputies to first ascertain whether an abused woman was present in another room and whether it was safe to leave the children with the intoxicated and highly agitated individual that the deputies had encountered. I think it would be reasonable for the deputies to stay and investigate further to make sense of the situation. One aspect of that investigation could be to check for warrants. The deputies could have conducted a protective sweep of the residence, but checking for warrants was an even less intrusive aspect of the investigation that enabled them to keep an eye on the person who answered the door—for that person's protection or for the protection of others—while the deputies attempted to assess whether a domestic violence situation was occurring or imminent.

Appellant might have been a domestic violence victim covering for her abuser. Or she could have been the abuser covering for herself. While most perpetrators of domestic violence are men, women sometimes are the perpetrators. A husband or boyfriend can be the victim of abuse from his wife or girlfriend, or children can be victims. Even if the deputies had determined that the woman who answered the door was not in danger—primarily because it was *she* who was yelling and throwing objects—that does not mean their job is done. They must also ascertain whether she is a threat to someone else. Just as they would have—and should have—done if the person they had encountered were a man.

The Court views the evidence in the wrong light. The trial court found that the noises and physical surroundings were consistent with violent activity and an altercation. Those findings were

entitled to deference.[1]  The Court concludes that both the trial court and the deputies erroneously inferred that "the only possible activity was domestic violence" and that "an upset woman plus disarray results only from domestic violence."  I disagree.  Nothing in the testimony or in the trial court's findings compels a belief that the deputies and the trial court thought that domestic violence was the only explanation for the information that the deputies had before them.   It was enough for the trial court and the deputies to believe that the situation the deputies faced *might* have been the result of domestic violence.[2]  Not only does the Court puts its own defendant-favored gloss on the evidence and the trial court's findings, but it misconstrues what quantum of information law-enforcement agents need to possess.  The deputies did not need to be certain that domestic violence had occurred before conducting the warrant check; it was enough that domestic violence was a reasonable possibility.

With these comments, I respectfully dissent.

Filed: November 21, 2012
Publish

---

[1]  *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[2]  *See Hamal v. State*, 2012 Tex. Crim. App. LEXIS 1179, at 9 (September 12, 2012) ("Nor is the issue even whether a hypothetical reasonable police officer would believe that the suspect understood the question.  The inquiry is whether a reasonable police officer would believe that the suspect *might* be lying.").