IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0705-11






CHRISTINA JEAN MILLER, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


KERR COUNTY





 Keller, P.J., filed a dissenting opinion in which Hervey, J., joined.


 The sheriff's deputies received a report of yelling, screaming, and the sounds of objects being
thrown in an apartment. When they approached the front door, they heard crashing noises, loud
music, and a person yelling. The person who answered the door was extremely distraught and highly
intoxicated. The deputies informed this person of the disturbance report, and they were invited in.
The person was upset because a dating companion was seeing other people. When asked, the person
said that the dating companion was not home and refused to divulge the dating companion's name. 
The deputies were informed that children were sleeping in another room. After the deputies obtained
the current adult occupant's own identification, they were told to leave. The deputies insisted upon
staying long enough to conduct a warrant check.

 If the person who had answered the door had been a man, would we have expected the
deputies to leave? Or would we have expected the deputies to first ascertain whether an abused
woman was present in another room and whether it was safe to leave the children with the
intoxicated and highly agitated individual that the deputies had encountered. I think it would be
reasonable for the deputies to stay and investigate further to make sense of the situation. One aspect
of that investigation could be to check for warrants. The deputies could have conducted a protective
sweep of the residence, but checking for warrants was an even less intrusive aspect of the
investigation that enabled them to keep an eye on the person who answered the door--for that
person's protection or for the protection of others--while the deputies attempted to assess whether
a domestic violence situation was occurring or imminent. 

 Appellant might have been a domestic violence victim covering for her abuser. Or she could
have been the abuser covering for herself. While most perpetrators of domestic violence are men,
women sometimes are the perpetrators. A husband or boyfriend can be the victim of abuse from his
wife or girlfriend, or children can be victims. Even if the deputies had determined that the woman
who answered the door was not in danger--primarily because it was she who was yelling and
throwing objects--that does not mean their job is done. They must also ascertain whether she is a
threat to someone else. Just as they would have--and should have--done if the person they had
encountered were a man.

 The Court views the evidence in the wrong light. The trial court found that the noises and
physical surroundings were consistent with violent activity and an altercation. Those findings were
entitled to deference. (1) The Court concludes that both the trial court and the deputies erroneously
inferred that "the only possible activity was domestic violence" and that "an upset woman plus
disarray results only from domestic violence." I disagree. Nothing in the testimony or in the trial
court's findings compels a belief that the deputies and the trial court thought that domestic violence
was the only explanation for the information that the deputies had before them. It was enough for
the trial court and the deputies to believe that the situation the deputies faced might have been the
result of domestic violence. (2) Not only does the Court puts its own defendant-favored gloss on the
evidence and the trial court's findings, but it misconstrues what quantum of information law-enforcement agents need to possess. The deputies did not need to be certain that domestic violence
had occurred before conducting the warrant check; it was enough that domestic violence was a
reasonable possibility. 

 With these comments, I respectfully dissent.

Filed: November 21, 2012

Publish
1. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
2. See Hamal v. State, 2012 Tex. Crim. App. LEXIS 1179, at 9 (September 12, 2012) ("Nor
is the issue even whether a hypothetical reasonable police officer would believe that the suspect
understood the question. The inquiry is whether a reasonable police officer would believe that the
suspect might be lying.").