ACCEPTED
04-14-00709-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/17/2015 10:57:18 PM
KEITH HOTTLE
CLERK

## No. 04-14-00709-CR

## IN THE COURT OF APPEALS

## FOURTH JUDICIAL DISTRICT

## AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
08/17/2015 10:57:18 PM
KEITH E. HOTTLE
Clerk

# EX PARTE
# FRANCISCO JAVIER GONZALEZ

## *Appellant*

## ON APPEAL FROM THE 399th DISTRICT COURT
## BEXAR COUNTY, TEXAS
## CAUSE NO. 2011-CR-9697

## REPLY BRIEF FOR APPELLANT

ROBERT A. JIMENEZ
DeMott, McChesney, Curtright &
Armendariz, LLP
800 Dolorosa St., Suite 100
San Antonio, Texas 78207
(210) 354-1844
(210) 212-2116 - Fax
SBN: 24059125
**ORAL ARGUMENT REQUESTED**

# **TABLE OF CONTENTS**

PAGE(S)

LIST OF AUTHORITIES 3

APPELLANT'S REPLY ARGUMENT 6

CERTIFICATE OF SERVICE 33

CERTIFICATE OF COMPLIANCE 34

# Index of Authorities

## Cases

*Delaware v. Van Arsdall*, 475 U.S. 673 (1968)……………………………...……25

*Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)……………………16

*Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012)……………...15

*Gonzales v. State*, 04-06-00259-CR, 2007 WL 1752130, at *4 (Tex. App.--San Antonio June 20, 2007)(mem. op. not designated for publication)……………….20

*Hamal v. State*, 390 S.W.3d 302, (Tex. Crim. App. 2012)………………….……11

*Haas v. State*, 172 S.W.3d 42 (Tex. App.—Waco 2005, pet. ref'd)…..20, 21, 22, 23

*Kothe v. State*, 152 S.W.3d 54, 67 (Tex. Crim. App. 2004)……………………….20

*Ohio v. Robinette*, 519 U.S. 33, 41, 117 S.Ct. 417,136 L.Ed.2d 347 (1996)..….…20

*Shelby v. State*, 819 S.W.2d 544, 547 (Tex. Crim. App. 1991)……...…25, 26, 27, 28

*St. George v. State*, 197 S.W.3d 806, 817 (Tex. App.--Fort Worth 2006) aff'd, 237 S.W.3d 720 (Tex. Crim. App. 2007)………………………………………………23

*United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004)……………….……19

*Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987)……………………25, 26

*Wade v. State*, 422 S.W.3d 661, 671 (Tex. Crim. App. 2013)………8,12,13, 14, 23

## Introduction

Appellant has argued that the trial court erred in denying his motion to suppress. Appellant relied primarily on the argument that the arresting officer lack sufficient reasonable suspicion to conduct investigation outside the scope of the original traffic stop. Further, even if the officer developed reasonable suspicion, it was not developed until after the purpose of the stop had been completed and was thus impermissible. In his second point of error, Appellant argued that the trial court's limiting of his cross-examination of the arresting officer was a violation of a substantial right that affected his defense.

## Legal Arguments with Authority

*Officer Carmona Lacked Reasonable Suspicion to Continue Appellant's Detention*

The trial court made written findings that stated that the arresting officer in this case, Officer Carmona, had three facts that supported reasonable suspicion to prolong Appellant's detention: he had observed Appellant parked briefly in front of a "suspected" drug house, Appellant appeared nervous when contacted, and Officer Carmona believed Appellant was lying about his route to his intended destination. Volume 1 Clerk's Supplemental Record 3-4. Appellant heavily attacked these "facts", asserting that they were nothing more than inarticulate hunches by Carmona.

Appellant heavily attacked Officer Carmona's assertion that the house was a suspected drug house, devoting significant time to attacking the lack of knowledge

4

that Carmona exhibited regarding the house. In attempting to refute Appellant's argument on this point, the State twice misstates the evidence produced at trial. First, in its Statement of Facts, the State asserts that "Officer Carmona was aware of activity at the house indicating narcotics were being sold out of the house: heavy traffic—both vehicles and foot traffic; visitors would stay only one or two minutes or they would come to the door and leave without entering the house…" State's Brief at 1-2. The State doubled down on this assertion stating that Officer Carmona "testified about his personal observations of activities at the house further indicating the sale of narcotics: several cars coming and going, high foot traffic to and from the house, people going inside and staying mere minutes before leaving or knocking on the door and leaving without entering the house at all." Id. at 10. However, these assertions are false. In fact, Appellant specifically pointed this out in his brief. (Appellant's Brief at 18-19). At trial, the State asked Officer Carmona to *generally* describe activity that could be considered consistent with a house dealing narcotics, to which Carmona gave the answer listed above by the State. Clearly, it was not a description of specific activity that Carmona had observed at Appellant's location. The State would have this Court believe that Carmona was testifying to activity that he personally observed at this specific location. This is simply untrue. As Appellant's trial counsel made clear, Carmona had never before observed any of the aforementioned activity at this location and had no prior dealings with this house.

Q: Now, you also had testified with regards to this particular house that you had not personally had any contact or dealings with that house; is that right?

A: That's correct.

Q: So, for example, you had not first made any arrests at that location?

A: At that time, no.

Q: And up to that time, you had not conducted any investigations yourself of that house, and you drive past; is that right?

A: That's correct.

3 RR 36. The State attempts to dismiss these "non-observations" by arguing, "none of these 'non-observations' diminish the reasonableness of [Carmona's] suspicions based on the factors he did have knowledge of." State's Brief 11, fn.1. Since the State's premise that Carmona had actual knowledge of observations consistent with drug activity at this location has been shown to be false, Appellant's argument does exactly what the State argues it does not: diminish the reasonableness of Carmona's suspicions based on an utter lack of knowledge. This is the crux of Appellant's argument as to why this critical factor does not support a finding of reasonable suspicion. All Carmona was able to testify to was that he had received some "complaints" about the house, but he articulated nothing that indicated he had reliable, specific and articulable information that the house was possibly involved in drug dealings,

Q (by State): Okay. Had you had any prior interactions with this house, any dealings with it?

A: No, not as of that day.

Q: Okay. And had this house been brought to your attention before?

A: Yes, it had.

Q: Who had brought this house to your attention.

A: Neighbors, citizens that live on that street.

Q: Okay. And based on the information that had been provided by those neighbors and citizens, I guess, how did you view this house? What was your take on this house?

3 RR 20-21. At this point the Court sustained a hearsay objection from defense counsel and asked the State to rephrased the question,

Q: And so based on being on patrol in that district, interacting, with citizens in that district, what was your general impression about that house?

A: That they might be dealing in narcotics.

Id. As the State notes, Appellant did argue in his opening brief that Carmona never offered testimony indicating that this was a "known" drug house. Appellant's Brief at 12, 14. Appellant's attack is directly on point. Carmona knew nothing about this house, and his "general impression" that the house was dealing in narcotics was based solely on the unarticulated, unspecified and vague "complaints" that Carmona

7

claimed he received. This is all the information Carmona had with regards to this factor and more importantly, it is all he articulated for the record. Officer Carmona's testimony regarding general drug house activity was irrelevant to his investigation of Appellant since he neither observed any of this activity in relation to Appellant nor had he ever observed any of this activity at this location previously. Thus, the State's argument that "[a]ll of this information considered together led the officer to reasonably believe narcotics were being sold out of the house" fails since the key premise is demonstrably false. State's Brief at 11. Further, this failed argument also dooms the State's conclusion that "this reasonable belief was one of several factors" which formed reasonable suspicion of criminal activity since the State relies heavily on this factor to bolster the remaining factors. Appellant again, asks this Court to find that Officer Carmona's assertion that the location where he observed was a "suspected" drug house to be nothing more than inarticulate hunch.

The State next addressed Appellant's nervousness as a factor supporting reasonable suspicion. Appellant will reemphasize that although nervousness can be considered in conjunction with other factors to support reasonable suspicion, even "unordinary nervousness" is not a "particularly probative" factor in establishing reasonable suspicion as "most citizens with nothing to hide will nonetheless manifest an understandable nervousness in the presence of the officer." *Wade v. State*, 422 S.W.3d 661, 671 (Tex. Crim. App. 2013). Given its low probative value, this factor

must lean heavily on other factors in order to support a finding of reasonable suspicion. The State seeks first to lean on its aforementioned drug house argument, already proven to be little more than a guess by Carmona. The State then argues the trial court's other factor found to support reasonable suspicion, that Carmona believed Appellant to be lying, was also sufficient to allow nervousness to be factored into the reasonable suspicion equation. However, as will be discussed later, this factor too relied heavily on the unsubstantiated hunch of Appellant's location as a drug house. The State additionally argues that, although not presented to the jury, Officer Carmona was aware that Appellant had a prior felony drug arrest, and that too allows the nervousness factor to be used in the reasonable suspicion analysis. State's brief at 12. Such an approach would be incorrect. What the State forgets is that this knowledge is gleaned only *after* Appellant was ordered to exit his vehicle based on Officer Carmona's suspicions about his destination, and thus after the separate drug investigation had begun. 3 RR 63. Thus the information about Appellant's prior drug arrest cannot support reasonable suspicion for his prolonged detention since it was obtained after the prolonged detention began. Officer Carmona's questioning about Appellant's prior criminal record cannot be said to be related to the purpose of the original inspection sticker infraction and is necessarily then a part of entirely separate investigation. Further still, the trial court itself recognized this and deliberately chose to include it as a factor supporting reasonable

suspicion to prolong Appellant's detention beyond the scope of the original traffic stop. See Supplemental Clerk's Record Volume 1 of 1. Consequently, this factor is irrelevant to the determination of whether Carmona possessed sufficient reasonable suspicion to detain Appellant for the purpose of conducting a narcotics investigation. Assuming *arguendo* that this Court could properly consider Appellant's prior drug offense, it still would not support reasonable suspicion to continue Appellant's detention.

The State cited to *Hamal v. State*, 390 S.W.3d 302, (Tex. Crim. App. 2012) to support its argument that Appellant's prior arrest justified his prolonged detention. State's brief at 12. However, in *Hamal* a key factor considered by the appellate court, and upheld by the Court of Criminal Appeals, in justifying the prolonged detention was not only that the defendant had a prior drug record, but also "she had misrepresented that she had never been arrested when, in fact, she had nine prior arrests, including four drug related arrests, and her lengthy criminal history, including several (and one very recent) drug related arrests." *Id.* at 305. Thus the existence of a prior drug record, combined with the defendant's deception about that record and an arrest a mere seven months earlier, all combined to support reasonable suspicion (in conjunction with other factors). In Appellant's case, he was truthful about his prior arrest, which occurred seven years before. 3 RR 63. The circumstances of the defendant in *Hamal* and Appellant's situations stand in stark

contrast to one another. Hamal had a litany of drug arrests, including one very recently and had lied about her criminal record. Appellant was honest regarding his record and he had a single drug arrest seven years before. One would hope Appellant's prior criminal record would cease being a factor into reasonable suspicion of separate crimes seven years after its occurrence. Given the inherently weak nature of both nervousness and a prior drug case these two factors should be afforded minimal, if any, value in determining reasonable suspicion.

The State next focuses on controverting Appellant's attack on Officer Carmona's belief that Appellant was lying about his route home from work. To support the proposition that Officer Carmona's assumption that Appellant was involved in criminal activity based on his given route, the State again relies initially on Carmona's guess that the house in front of which Appellant was observed was a drug house,

> Appellant's answer [about his route] caused Officer Carmona to suspect he was lying for two reasons. First, the officer had just witnessed him driving away from a suspected drug house. Second, the area where Appellant was pulled over was not on a likely route between his place of employment and his house.

State's Brief at 13 (internal citations omitted). Again the State relies first on Carmona's suspicion that the house was a drug house. As Appellant has thoroughly demonstrated, that belief was nothing more than unarticulated hunch. Therefore, the only justification left for Carmona, according to the State, to justify his suspicions

regarding Appellant's route home stem from his belief that it was not a "likely route" for Appellant to be traveling. Id.

As Appellant argued in his opening brief, Officer Carmona explained that Appellant had two similar routes he could take to get home, one of which would have put him in the area of the stop. 3 RR 48. Much like Carmona's unsupported guess that the house where Appellant was parked was a drug house, his opinion regarding Appellant's route home is similarly pure speculation. In addition to admitting that Appellant could in fact be taking a similar route home from that direction, Officer Carmona also recalled that there was food in Appellant's vehicle and acknowledged that he may have stopped somewhere along this route to pick it up. 3 RR 46-47. Where are the specific and articulable facts showing that Appellant's actions are not only "odd" but indicative of criminal activity? See *Wade* at 671. Officer Carmona's purported suspicions appear to rely on two guesses: first, that Appellant was driving away from a drug house, and second that Officer Carmona believed that Appellant's route was not the most convenient way home. Officer Carmona's belief that Appellant's behavior seemed strange to him is insufficient to generate reasonable suspicion. The behavior upon which an officer relies "may have seemed odd to [him]. But that is not the issue. What matters are the objective facts that indicate criminal activity, not the officer's characterization of them…" *Wade* at 671. Like the game warden in *Wade*, Carmona "admitted that he had no personal

knowledge of whether appellant was telling the truth" about his route home. Carmona testified, that he believed Appellant to be lying "because of his story not matching up." 3 RR 27.

> But an officer and the Government must do more than simply label a behavior as 'suspicious' to make it so. The Government must also be able to either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance.

*Wade* at 672. Officer Carmona offered nothing to articulate why Appellant's route was "suspicious" other than it was not the most convenient route home. Coupled with his admissions that Appellant had a similar alternate route that he could have been taking, or that the food in his vehicle could have been from a restaurant in his location, it is clear that Carmona had no specific or articulate facts on which to base reasonable suspicion.

The State concludes by stating that Officer Carmona developed reasonable suspicion through his experience "working at least 100 narcotics arrests; his knowledge that the house Appellant was seen leaving was a suspected drug house; Appellant's prior felony drug arrest; Appellant's excessive nervousness during the stop; and the officer's suspicions that Appellant was lying based on the inconsistencies surrounding his driving route." State's Brief at 14. However, the State's list is as strong as a house of cards. That Carmona worked at least one

13

hundred narcotics does not transform his unsubstantiated opinion into a specific fact. All of his prior experience is of no value when he admits that he observed no activity at Appellant's location consistent with drug activity on either the day of Appellant's arrest or on any day before that. While the State has asserted that Officer Carmona made various drug related observations about this house, this has been proven false. Carmona's testimony was crystal clear: never before had he made any arrests at that location, never had he conducted any investigations of that location, and in regards to Appellant, he witnessed no activity suggesting drug activity. Since Appellant's prolonged detention was well underway by the time Officer Carmona asked Appellant about his criminal history, Appellant's prior arrest cannot retroactively be used to support reasonable suspicion at the time the prolonged detention began. Officer Carmona had little more than a funny feeling that Appellant's route home was odd, but he offered nothing to support why this was indicative of criminal activity. All Carmona could offer was that in his opinion that Appellant had not chosen the most convenient route. Of the State's list of supporting "facts", the only one that Officer Carmona was able to offer specific facts to support was Appellant's nervousness. Carmona testified that Appellant's hands were "shaking a little bit" 3 RR 38. It's here that the State's house of cards falls flat, for the only factor to reasonably support a finding of reasonable suspicion is the one Texas has found to be "of little probative value". *Wade* at 671. This Court should find that Officer

Carmona lacked reasonable suspicion to prolong Appellant's detention to conduct an investigation not limited in scope to the reason for the original stop.

*Purpose of the Stop Concluded*

Appellant asserted in his opening brief that in the alternative, even if Officer Carmona developed reasonable suspicion sufficient to prolong Appellant's detention, the purpose of the stop was concluded before such reasonable suspicion was developed. The State responds by claiming that "Appellant inappropriately asks this Court to disregard the trial court's careful consideration and detailed review of the record." State's Brief at 15. The State correctly points out that almost total deference is given to the trial court's determination of historical facts when supported by the record and that a reviewing court affords "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence". *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). However, Appellant argues that (1) the trial court's determination of historical facts would not be supported by the record and (2) the record offers no evidence from which a reasonable inference can be drawn that the traffic stop had concluded.

Appellant reiterates a crucial argument from his opening brief: once a defendant has shown that his arrest or detention occurred without a warrant, the burden of proof shifts to the State to establish that the search or seizure was reasonable. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The State

had the burden in this case to prove that Officer Carmona's search and seizure of Appellant, outside the scope of the original stop, was reasonable. Specifically, with respect to the State's argument, the State had the burden to show that traffic stop was not yet complete at the time Officer Carmona began his prolonged detention of Appellant. A critical historical fact in this determination is the point at which Officer Carmona issued Appellant a "verbal warning". 3 RR 52. The point at which Carmona issued the warning would signal the end of Appellant's detention related to the traffic stop and Officer Carmona would at that juncture need reasonable suspicion to continue detaining Appellant. In meeting its burden to show that Carmona's investigation into narcotics was reasonable, the State needed to pinpoint the moment when the stop concluded. Only with that moment identified would the trial court be able to determine if Carmona had obtained sufficient reasonable suspicion to continue his detention of Appellant, or if his actions post conclusion of the traffic investigation were unreasonable. The State concedes in its brief that Officer Carmona failed to testify at what point he issued the warning citation to Appellant, "the matter of precisely when the verbal warning was given was never addressed during the officer's testimony." State's Brief at 15. It was the State that elicited the testimony from Carmona that a verbal warning had been given. 3 RR 52. For whatever reason, the State failed to follow up and ask when Officer Carmona issued the warning. Not once in its brief does the State ever offer any argument or

supporting evidence to substantiate the argument that Carmona had not yet issued the warning prior to his questioning Appellant about his destination or prior to ordering him from the vehicle to question him about narcotics.

The State then makes an unsupported claim that Appellant misrepresented the evidence at trial by stating, "based on Officer Carmona's testimony, he'd given [Appellant] a warning and his warrant check had come back clear." State's Brief at 15, 3 RR 62. By the State's own admission, there is no point in the record where there is any reference to the point in time where Officer Carmona issued the verbal warning and the State failed to advance any support for the notion that Appellant's claim was inaccurate. Appellant's interpretation was far more reasonable, after all, how could Carmona have written a citation after he had given Appellant back all of his identification? It is logical to deduce that at the point he handed Appellant back his identification Carmona had determined to give Appellant a warning and end the traffic stop. Somehow, the State argues on one hand that it is misrepresentation of the evidence to argue that the warning occurred at the same time as the return of the license and registration, yet argues on the other hand that it is a proper representation to claim the warning was issued at the after Appellant's arrest, despite the acknowledged total lack of evidence regarding the timing of the verbal warning. Despite the State's assertion that the trial court conducted a "careful analysis" regarding the order of events, the fact is that there was nothing for the trial court to

consider since the State failed to elicit any testimony to meet its burden that the traffic stop had not yet concluded. There was no evidence on point for the trial court to deduce that the warning was given at the very end of the interaction. Therefore, this Court should find that the State failed to carry its burden to show the traffic stop was concluded by failing to have Officer Carmona specify when he issued the verbal warning. By extension, Appellant asks this Court to find that any assertion to the contrary implied by the trial court is unsupported by the record. The record is wholly silent as to when the Appellant received the verbal warning for the expired sticker. As such, any finding by the trial court that the purpose of the stop had not yet concluded is not supported by the record.

Additionally, the State's contention that the trial found the detention to be lawful based upon a finding that the reason for the stop was not yet concluded is unsupported for another reason: the trial court failed to list this rationale in its Findings of Facts and Conclusions of Law. 1 SCR 1. . When the trial court announced it's ruling during the trial, it was vague as to the grounds for the denial, stating only, "I went through the whole record and based on what we pulled out of there, I'm going to deny your motion." 3 RR 88. Given that Appellant advanced multiple grounds of suppression, it is unclear as to exactly why the trial court denied the motion. However, in its written opinion, the trial court specifically found that Carmona developed reasonable suspicion prior to beginning the prolonged detention

and made absolutely no finding regarding the "historical fact" of when the verbal warning occurred. 1 SCR 1. The State wishes for this Court to conjure up this historical fact from a silent record. Because the record is silent as to the timing of the verbal warning, and because it was the State's burden at trial to show the reasonableness of the seizure, this Court should find that Appellant's seizure beyond the scope of the original traffic stop was illegal.

The State argues in the alternative that "the evidence supports the trial court's finding that the traffic stop was not yet complete because the officer was still asking questions that have been held to be a presumptively routine part of traffic stops." State's brief at 16. This argument only holds water if Carmona's questioning about Appellant's destination came before the purpose of the stop had concluded. As mentioned above, the trial court made no such explicit finding or whether the traffic stop had concluded prior to Carmona's drug investigation. If the reason for the stop had concluded, e.g. Officer Carmona had handed Appellant back his license and registration and given him a verbal warning, then Officer Carmona's question regarding Appellant's destination was impermissible. The cases cited by the State all stand for the proposition that questioning regarding travel plans and destination are all *within the scope of a traffic stop*. See *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (emphasis by Appellant). The key phrase to consider is "within the scope of the traffic stop". Had Officer Carmona inquired about Appellant's

destination prior to the warning, then the State is correct (regarding this specific issue) that Carmona's questioning was permissible. But, if the questioning came *after* the investigation into the traffic stop was over, then questions regarding Appellant's destination are no longer part of the traffic stop's investigation and serve only as a "fishing expedition" for evidence of other crimes. *See Ohio v. Robinette*, 519 U.S. 33, 41, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Kothe v. State*, 152 S.W.3d 54, 67 (Tex. Crim. App. 2004); *Gonzales v. State*, 04-06-00259-CR, 2007 WL 1752130, at *4 (Tex. App.--San Antonio June 20, 2007)(mem. op. not designated for publication). Any questioning after the stop was completed without independent reasonable suspicion is clearly a violation of Appellant's rights under the Fourth Amendment. Appellant reiterates his earlier argument: because the State failed to carry its burden to show when the verbal warning was issued, it was impossible for the trial court to know when the stop ended and thus what questioning was permissible and what was not. As such, Appellant's motion to suppress should have been granted.

The State attempts to argue in the alternative that even if the traffic stop was indeed over by the time Officer Carmona obtained Appellant's consent to search, Carmona's actions were not unreasonable under the circumstances and thus permissible. State's brief at 17. The State relies on *Haas v. State*, 172 S.W.3d 42 (Tex. App.—Waco 2005, pet. ref'd), to support its position. *Haas* was a case that

relied upon the rationale that the arresting officer had developed sufficient reasonable suspicion to continue a prolonged detention and eventual search of a motorist. Appellant again reasserts his argument that Officer Carmona lacked any reasonable suspicion to prolong Appellant's detention. Without rehashing this argument, Appellant will simply point out that here too, the State initially relies on Carmona's testimony that he saw Appellant leaving a suspected drug house. The State also argues that Appellant's prior arrest was a factor in providing Officer Carmona with reasonable suspicion. Again, this knowledge was not ascertained until after Appellant was ordered to exit the vehicle and thus was not in relation to the purpose of the original stop but was part of the separate narcotics investigation.

Moreover, Appellant's case is distinguishable from *Haas*. There, the Waco Court of Appeals agreed with the officer's contention that the defendant's story regarding his destination increased in its implausibility as the defendant continued talking, "[Officer] Frye thought the [defendant's] story was implausible and inconsistent and became more implausible and inconsistent as Frye questioned Haas" *Id*. at 54. The officer in *Haas* was also able to articulate exactly why he thought the defendant's explanation of his destination was implausible,

> Frye then asked Haas what car auction in Houston he had gone to, but Haas responded that he had just gone to "check on it." Frye said that this response also made him suspicious. Frye next asked Haas how he was going to get home if he sold the car, and Haas said he would have taken a bus. Frye testified that, at this point, he thought Haas was just "making up stuff" to please Frye.

> Frye next asked Haas for paperwork for the car, and Haas began to search for it. While Haas was searching, Frye asked him what kind of work he did, and Haas said he was just starting his own business buying and selling used cars. Haas volunteered that he was going to take a loss on this car because the original motor was blown and he had to put a used motor in it. Frye asked Haas why he didn't just put the car back in a car auction if it needed a new motor, and Haas responded that it would not have brought anything. Frye concluded that Haas was now changing his story, as Haas had earlier said that he was going to check on a car auction in Houston. They then reviewed the car's paperwork, and Frye pointed out that the title had not been signed by the previous owner.

*Id.* at 47. In addition to the changing story given by the defendant in *Haas*, the officer further testified that the defendant later told him that he only had one vehicle in his so called business (the one he was driving), and then changed his story again to state he was "mostly just test driving" the car. *Id.* Additionally, the officer felt that the timing of the defendant's travel, as well as the notion that the defendant would drive all the way from Mississippi to Houston without knowing for certain that he had a buyer for the vehicle was unbelievable. *Id.* at 47-48. The appellate court held that these specific facts, in conjunction with increasing nervousness and the defendant's over-volunteering of information, was sufficient to satisfy reasonable suspicion. *Id.* at 53. Specifically, referencing the officer's rationale as to how why he decided to detain the defendant, the Court found that the officer, "followed up on the volunteered information with legitimate questioning." *Id.* at 53. The Court found that the officer continued to develop more and more information to justify his initial

22

suspicions that the defendant's story regarding his destination was untruthful. *Id.* This is a far cry from the investigation conducted by Officer Carmona. Officer Carmona only asked Appellant where he was going and from where he was coming. 3 RR 26-27. Though Carmona testified he found this suspicious, he did nothing to confirm or dispel his suspicions about Appellant's story in order to justify a further detention; he simply launched into a narcotics investigation. *See St. George v. State*, 197 S.W.3d 806, 817 (Tex. App.--Fort Worth 2006) aff'd, 237 S.W.3d 720 (Tex. Crim. App. 2007). Carmona asked no questions as to why Appellant was traveling that particular route or why he was coming from that particular direction. Carmona took his initial unconfirmed hunch and launched right into ordering Appellant from the vehicle and asking Appellant about his previous criminal history and if he was in possession of narcotics. 3 RR 63. Whereas Officer Frye in *Haas* continuously built up evidence and information to support his initial suspicions prior to asking Haas if he possessed anything illegal, Officer Carmona went straight from initial suspicion to a ordering Appellant from the vehicle to ask him about narcotics. In sum, Carmona did nothing to confirm his hunch that Appellant's route was suspicious. He offered no specific and articulable facts that showed Appellant's route was more than just suspicious but indicative of criminal activity. *Wade* at 672 (Tex. Crim. App. 2013). Appellant's situation is much closer to the situation examined in *Wade*, discussed in detail in Appellant's brief, where the Texas Court

of Criminal Appeals held, "[b]ecause the warden's characterization of appellant's replies as lies is not supported by the record, we disregard the finding that the 'changing story' had probative value in the reasonable suspicion analysis." *Id.*

Combined with the fact that Carmona similarly had nothing to back up his claim that the location where he viewed Appellant was a drug house, it is clear that the only fact Carmona could articulate for the trial court was that Appellant was nervous. The State has claimed that the totality of the circumstances supports a finding of reasonable suspicion. But what the State wishes this Court to overlook is that two of the three grounds listed by Carmona and the trial court are nothing more than inarticulate hunches. It takes more than a combination of inarticulate hunches to justify the detention of an individual. Appellant respectfully asks this Court to reverse the decision of the trial court and grant his motion to suppress.

## *Limitation on Cross-Examination*

Appellant has argued that the trial court impermissibly restricted his right to cross-examine Officer Carmona when it admonished Appellant that any attempt to question the officer would result in the court advising the jury that Appellant had been the reason for the delay in bringing the cause to trial. 3 RR 37. Appellant has argued that no objection was needed to preserve error on this issue since he sought to question the State's witness about a certain general subject that might have affected that witnesses' credibility and thus all that was needed to preserve error was

to "establish what general subject matter he desired to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence." *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987). The State has asserted that Appellant failed to preserve this error, and, even if the issue is properly preserved, that he has failed to meet the five prong test adopted by Texas from *Delaware v. Van Arsdall*, 475 U.S. 673 (1968) in *Shelby v. State*, 819 S.W.2d 544, 547 (Tex. Crim. App. 1991).

Appellant re-asserts his argument that no objection was needed to preserve this issue. He sought to question Officer Carmona on a general subject matter—the amount of time that had elapsed between the offense date and trial and its effect on Carmona's memory—that would have affected his credibility—was he truthfully able to remember certain details. Clearly, Appellant established the general subject matter he wished to question Officer Carmona about since even the State asserted that the trial court "anticipat[ed] Appellant's aim." State's brief at 22. The State then makes an assertion that the "trial court disallowed [Appellant] from capitalizing on a state of affairs he caused and using it as a means of attacking the credibility of the officer." Id. This claim is unsupported by any case law suggesting that this is a proper reason for restricting a defendant's constitutional right of cross-examination. Whether Appellant was the cause of the delay or not is irrelevant to whether he should have been allowed to cross examine the officer as to his ability to recall

certain details after the passage of several years. That years could have affected the memory of a witness is an objective issue, irrespective of the cause. Appellant's rationale and purpose were clear, which is the exact reason the trial court immediately jumped in to put a halt to Appellant's line of questioning. The State argues that Appellant did not apprise the court of why the testimony was important and therefore failed to preserve the error for review. Id. at 23. However, the State misunderstands the standard for preserving error under *Virts*. *Virts* lists no such requirement that an appellant explain why his testimony is important, only that he establish the general subject matter that he wishes to explore, and, *if challenged* at trial, to show why it should be admitted." *Virts* at 29. Here, Appellant's line of questioning was unchallenged by the State as to its admissibility. Even if the State had challenged Appellant's questioning, it was clear to everyone, including the trial court, as to why it should be admitted. Obviously, if Carmona's memory had suffered from the lapse in time from the date of arrest to the date of trial, the jury should have been allowed to hear about it in order to properly assess the credibility of Officer Carmona. Because Appellant has illustrated that the record supports his argument that he did preserve this issue for review, and because the State has agreed the trial court had anticipated Appellant's line of questioning, this Court should review Appellant's claim under the test set forth in *Shelby*.

As mentioned by both the State and Appellant, *Shelby* outlined a three pronged test to determine if the restriction on cross-examination resulted in harmless error. *Shelby* at 547. Under the first prong, a reviewing court must assume the full damaging potential of the cross-examination was realized. *Id.* at 547. Under the second prong, the Court must review the error in light of five factors: 1) The importance of the witness' testimony in the prosecution's case; 2) Whether the testimony was cumulative; 3) The presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; 4) The extent of cross-examination otherwise permitted; and, 5) The overall strength of the prosecution's case. *Id.* at 547. For purposes of brevity, Appellant will not discuss, but will simply mention, the two points on which both Appellant and the State are in agreement. First both sides agree that under the first factor, the testimony of Officer Carmona was "critical to the State's case as he was the only witness able to testify at [trial] about the stop." State's brief at 23. Second, under the fourth factor, both sides agree that Appellant's counsel was otherwise fully able to cross-examine Officer Carmona. See State's Brief 25.

Factor Two: Whether the testimony was cumulative

The State argues that Officer Carmona's testimony was cumulative. State's brief at 23. The State first attempts to argue that Carmona's testimony was cumulative because the year "2011" was mentioned twenty times during trial. See

27

Footnote 2 at 23. The first three instances of "2011" being mentioned occur during either the reading of the indictment or opening argument. None of these instances are testimony or evidence. The next eight instances listed by the State are mentioned during Officer Carmona's own testimony. The following five instances occur during testimony of the detective and the forensic scientist and are all instances of the State asking each witness where they were working in 2011, what their duties were on September 9, 2011, or if evidence was received on a certain date in 2011. The final two instances are found during closing arguments, once again, statements that are not evidence. Moreover, the State misconstrues what it means to be "cumulative". The issue under this factor is not whether one uncontroverted fact is mentioned in passing several times, i.e. the case began in 2011, but whether the testimony of the particular witness is merely cumulative of other evidence. Under this factor, what matters is Officer Carmona's testimony as a whole. No one is questioning when the case originated. The purpose of this analysis is to analyze how the jury would perceive the witnesses' testimony and the state of the remaining evidence assuming the "damaging potential of the cross-examination was fully realized." *Shelby* at 550. Here, Officer Carmona was the only witness who offered any testimony regarding Appellant's stop, the questioning of Appellant, any potential reasonable suspicion to continue detaining Appellant, and the circumstances of the search of Appellant and

his vehicle. No other witness at trial offered any testimony on these critical issues. Therefore, Officer Carmona's testimony was not cumulative.

Factor Three: Whether there was corroborating or contradicting testimony on material points

Appellant argued that no other witness corroborated Officer Carmona's testimony. The State attempts to counter this position by stating that every other witness corroborated Officer Carmona's testimony. This argument is misleading. No other witness corroborated Carmona's substantive testimony regarding the stop, detention, investigation, and search of Appellant. The facts which the State claims were corroborated were by and large, inconsequential. The State argued that the "investigator corroborated Officer Carmona's testimony about the date and location of the stop, and the identity of Appellant." State's Brief at 25. Aside from the fact that the date, location, and identity of the Appellant were never in question, none of these facts are in any way relevant to Officer Carmona's testimony regarding the circumstances of Appellant's arrest. The State next argues that the forensic scientist who performed the laboratory testing of the substance found on Appellant and asserted that "[h]e corroborated Officer Carmona's testimony about the San Antonio Police Department case number and it's correlation to the substance he tested in the lab and that substance was identified as cocaine." Id. Here again, the State points to facts which have little to no bearing on the heart of Officer Carmona's testimony. It

hardly matters whether the forensic scientist corroborated the number assigned to the case, or that he tested confirmed the substance was cocaine. That Appellant had cocaine was hardly in doubt. The critical issue throughout trial was the manner in which Officer Carmona found the cocaine. And on this issue, there is no evidence to corroborate his version of events.

Factor Five: The overall strength of the prosecution's case

The State concedes that "[i]f Officer Carmona's testimony were completely excluded, the prosecution would have been unable to proceed to trial…" due to Officer Casiano being on military deployment at the time of trial. Id. at 26. The State then asks that this Court ignore the fact that only Officer Carmona testified and imagine instead that the missing officer would have offered the same testimony as Carmona. There is no record of what Officer Casiano would have testified to and it is inappropriate to assume that he would have testified to the exact same facts as Officer Carmona. While the State accuses Appellant of using "delay tactics" and was thus the cause of Officer Casiano's absence, the State offers no explanation as to exactly what Appellant's supposed "delay tactics" were. Moreover, that Appellant may have been one source for the delay does not grant a reviewing court to assume the testimony of an absent witness. The State offered only witness of regarding the stop and detention of Appellant. Overall, the State's case was not very strong.

*Harmless beyond a reasonable doubt*

The State argues that because Appellant was able to challenge weaknesses in Officer Carmona's testimony through other means, then the error in preventing him from attacking Carmona on the time's effect on his memory was harmless. State's Brief at 27. But it was precisely this attack on Carmona's memory that connected all of the other weaknesses highlighted by Appellant during trial. The discrepancies between Officer Carmona's report and his testimony, his misstatement about the type of vehicle Appellant was driving, and his difficulty recalling the exact moment when Appellant was pulled from the vehicle would all have been connected by the attack on Carmona's memory. It would have been clear for the jury that his struggles with certain facts were demonstrative of time's effect on his ability to recall important details, thereby calling into question the entirety of his recollection of his detention of Appellant and strengthening Appellant's argument that his search and seizure were illegal. As Appellant argued in his opening brief,

> [c]onsidering the dearth of corroborating evidence presented by the State, the lack of other evidence or testimony tying Appellant to the crime, and the overall weakness of the State's case without Officer Carmona's testimony, it cannot be determined beyond a reasonable doubt that the denial of Appellant's fundamental right to cross-examination was harmless.

Considering the crippling effect this attack could have had on the State's star witness, this error cannot be considered harmless. Therefore, Appellant asks this Court to vacate his conviction and remand for a new trial.

Respectfully submitted,

ROBERT A. JIMENEZ

DeMott, McChesney, Curtright &
Armendariz, LLP
800 Dolorosa St., Suite 100
San Antonio, Texas 78207
(210) 354-1844—Phone
(210) 212-2116 – Fax


By:    /s/ Robert A. Jimenez
       ROBERT A. JIMENEZ
       SBN: 24059125

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief for the Appellant was served upon opposing counsel, Mr. Amanda C. Byrd, of the Bexar County District Attorney's Office, in San Antonio, Texas, by email, on the 17th day of August, 2015.

/s/Robert A. Jimenez
Robert A. Jimenez

## CERTIFICATE OF COMPLIANCE

In accordance with Tex. R. App. P. 9.4, I hereby certify that this brief contains 7,156 words, which have been counted by use of the *Word* program with which this brief was written.

/s/ Robert A. Jimenez_____
ROBERT A. JIMENEZ