**Opinion issued May 5, 2020**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-19-00578-CR**

————————————

**LISA JAMES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 14**
**Harris County, Texas**
**Trial Court Case No. 2186131**

---

## MEMORANDUM OPINION

A jury convicted appellant, Lisa James, of the offense of driving while intoxicated.[1] The trial court assessed her punishment at confinement for 180 days,

---

[1] *See* TEX. PENAL CODE § 49.04.

suspended the sentence, and placed her on community supervision for one year. In her sole issue, appellant contends that the trial court erred in failing to instruct the jury in accordance with Texas Code of Criminal Procedure article 38.23, which authorizes a jury to disregard evidence that it concludes was illegally obtained.[2]

We affirm.

## Background

Harris County Constable's Office, Precinct 4, ("HCCO") Lieutenant W. Harrah testified that, at approximately 1:00 a.m. on January 18, 2018, he was on patrol on Louetta Road in northwest Harris County when saw a car enter Louetta from a private driveway. When the car first entered the roadway, it traveled "down the center stripe" in two lanes, "straddl[ing] one of the divider lines." The car "stayed that way for a little bit, and then moved into the right lane." Harrah followed the car for approximately two miles.

During that time, Lieutenant Harrah noted that the car did not maintain a consistent speed and that, at times, it exceeded the speed limit. While traveling in a 40-mile-per-hour zone, the speed of the car fluctuated between 30 and 60 miles per hour. In addition, at times, the left wheels of the car drifted over the left lane divider

---

[2]   *See* TEX. CODE CRIM. PROC. art. 38.23(a) ("In any case, where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained").

and, at times, the right wheels drifted over the fog line. Harrah testified that, when the car reached Stuebner Airline Road, "where [he] didn't want to keep going," he activated his lights and initiated a traffic stop. He noted that activating his lights also activated his dashboard camera, which captured the 30-second interval prior to activation. The car pulled into a parking lot and stopped. Harrah noted that he "stopped [the car] there because that [was] the first legitimate, well-lit parking lot on that stretch of road." The trial court admitted into evidence the dashcam video of the traffic stop.

Lieutenant Harrah further testified that, when he approached the driver, who was appellant, he smelled a "very[] strong odor of alcoholic beverage." Based on his training and experience, considering appellant's inability to maintain a consistent speed or single traffic lane, and the odor of alcohol emanating from her person, he concluded that a DWI investigation was necessary and called for assistance.

HCCO Deputy J. King testified that, when he arrived on the scene, appellant was seated in her car. King "immediately detected a strong odor of alcohol" coming from inside appellant's car. King also noted that appellant had slurred speech and red, glassy eyes and that her passengers appeared extremely intoxicated. When King asked appellant to get out of her car, she was "swaying and a little uneasy on her feet." Appellant agreed to perform field sobriety testing.

Deputy King testified that, with respect to the horizontal gaze nystagmus test, appellant displayed five of the six possible clues of intoxication. He also observed six of the eight possible clues of intoxication during her performance of the walk-and-turn test. Namely, appellant could not maintain the "ready position," and, once she began the test, she used her arms for balance, swayed, stepped off of the line, and failed to step or count as directed. During King's delivery of the instructions for performing the one-leg-stand test, appellant admitted that there was "no way she was going to be able to perform the test." King testified that, based on his training and experience in investigating DWI cases, he concluded that appellant was intoxicated and placed her under arrest. The trial court admitted into evidence a dashcam video of the field sobriety testing that King conducted on appellant.

At the close of the guilt-innocence phase of trial, appellant affirmatively stated that she had no objection to the jury charge. During its deliberations, the jury sent a note to the trial court, asking: "If the jury feels that there wasn't probable cause for the defendant to be pulled over, is the rest of the evidence still able to be considered or inadmissible?" The following colloquy then occurred:

| [Trial Court]: | . . . . The proposed answer that I'm giving is, the jury charge you have been giving is all the law you need in this case. Continue your deliberations. Does anybody from either side have any objection to my response? |
|---|---|
| [The State]: | The State has no objection, sir. |
| [Trial Court]: | [Defense counsel], do you have any objection? |

| | |
|---|---|
| [Defense Counsel]: | Well, I mean, 38.23 does say that if— |
| [Trial Court]: | You won't hurt my feelings, you can make an objection. |
| [Defense Counsel]: | Yeah, 38.23 does say someone—if the jury believes that someone has violated the Constitutional rights of the defendant in obtaining evidence, that they are to ignore the evidence. |
| [Trial Court]: | Right, but you didn't ask for that charge. |
| [Defense Counsel]: | Well, because— |
| [Trial Court]: | There was no factual dispute to base it on. |
| [Defense Counsel]: | Right. |
| [Trial Court]: | All right. Your objection is overruled. |

The jury found appellant guilty of the offense of driving while intoxicated. The trial court placed her on community supervision for one year.

## Jury Instruction

In her sole issue, appellant argues that the trial court erred "by refusing to give an Article 38.23 jury instruction" on illegally obtained evidence. *See* TEX. CODE CRIM. PROC. art. 38.23. She asserts that, based on the jury's note, it "believed Lieutenant Harrah stopped [her] without probable cause because his cruiser's dashcam video and his testimony presented irreconcilable, disputed facts about [her] driving and the circumstances of Harrah's stop." Thus, "[t]his evidence created a legal issue that required the court to submit to the jury an Article 38.23 instruction." She asserts that she was harmed based on the error because all of the evidence against

her resulted from the disputed stop. *See Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

## A.  *Standard of Review and Governing Legal Principles*

We review alleged charge error by first determining whether error exists in the charge. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If error exists, we then analyze the harm resulting from the error to determine whether reversal is required. *Id.* In determining harm, we apply "separate standards of review depending on whether the defendant timely objected to the jury instructions." *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. App. 2016) (applying *Almanza*, 686 S.W.2d at 171). If the defendant timely objected, then reversal is required if we determine that the error caused the defendant "some harm." *Id.* If the defendant did not timely object, then reversal is required only if the error was "so egregious and created such harm that the defendant did not have a fair and impartial trial." *Id.* "*Almanza* does not apply," however, "unless the appellate court first finds 'error' in the jury charge." *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998).

To conduct a traffic stop in compliance with the Fourth Amendment, an officer must have "reasonable suspicion." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012); *see also* U.S. CONST. amend. IV. Reasonable suspicion exists "when an officer is aware of 'specific articulable facts that, when combined

with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Hamal*, 390 S.W.3d at 306. The reasonable suspicion standard is wholly objective; the subjective intent of the officer conducting the investigation is irrelevant. *Id.* The standard requires only "some minimal level of objective justification" for the stop. *Id.* Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to de novo review. *Id.*

Texas Code of Criminal Procedure article 38.23 provides that evidence obtained in violation of state or federal law may not be admitted in a criminal case and that a jury instruction must be submitted *if a fact issue is raised about whether such a violation has occurred*. *Id.* Article 38.23 states:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. art. 38.23(a).

Because the statute is mandatory, the trial court has a duty to sua sponte submit the instruction if three predicates are met: (1) evidence heard by the jury raises an issue of fact about how the evidence was obtained, (2) the evidence on that

7

fact is affirmatively contested, and (3) the contested factual issue is material to the lawfulness of the challenged conduct. *Contreras v. State*, 312 S.W.3d 566, 574 (Tex. Crim. App. 2010); *see Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) ("When a disputed, material issue of fact is successfully raised, the terms of the statute are mandatory, and the jury must be instructed accordingly.").

Under the first prong, there must be a genuine dispute about a material fact. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). If the issue raised by the evidence does not involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court. *Robinson*, 377 S.W.3d at 719.

Under the second prong, there must be some affirmative evidence in the record that places the existence of the fact into question. *Madden*, 242 S.W.3d at 513 & n.22 (citing 40 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 4.194 at 282 (2d ed. 2001) ("The defendant must affirmatively introduce evidence that, if credited, would justify a reasonable jury in concluding that there is a reasonable doubt as to a factual matter essential to the admissibility of the evidence.")). A fact issue about whether evidence was legally obtained may be raised "from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable." *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (quoting *Wilkerson v. State*, 933 S.W.2d 276, 280 (Tex. App.—Houston [1st

Dist.] 1996, pet. ref'd)). However, a "cross-examiner's questions do not create a conflict in the evidence, although the witnesses's answers to those questions might." *Madden*, 242 S.W.3d at 513. "Mere insinuations" that an officer was on a fishing expedition do not suffice to raise a fact issue entitling a defendant to an article 38.23 instruction. *See Garza*, 126 S.W.3d at 87.

Under the third requirement, the disputed fact issue must be essential to deciding the lawfulness of the challenged conduct. *Madden*, 242 S.W.3d at 511. If other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not material to the ultimate admissibility of the evidence and is not to be submitted to the jury. *Id.* at 510.

## B. *Analysis*

Appellant asserts that the dashcam video from Lieutenant Harrah's patrol car refuted his testimony regarding the reason for the traffic stop and placed in dispute the facts essential to the legality of the stop. Namely, she asserts, the video contradicts Harrah's testimony that he stopped her at the first well-lit parking lot, that she failed to drive in a single lane, and that she did not use her turn signal. The State asserts that none of appellant's assertions constitute contested material facts.

The record shows that Lieutenant Harrah testified that he saw appellant's car enter the roadway and travel "down the center stripe" in two lanes, "straddl[ing] one of the divider lines." He testified that appellant "stayed that way for a little bit, and

9

then moved into the right lane." Harrah followed appellant for approximately two miles. During that time, the left wheels of appellant's car drifted over the left lane divider, and the right wheels drifted over the fog line. In addition, appellant drove over the speed limit and did not maintain a consistent speed. While traveling in a 40-mile-per-hour zone, her speed fluctuated between 30 and 60 miles per hour.

It is well-established that an officer may lawfully stop an individual for a traffic violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). Driving a motor vehicle at a speed in excess of a posted speed limit constitutes prima facie evidence that the driving speed is not reasonable and prudent and is unlawful. *See* TEX. TRANSP. CODE § 545.352(a) (governing speed limits); *see also id.* § 545.351(a) ("Maximum Speed Requirement"); *Markle v. State*, No. 01-13-01028-CR, 2015 WL 505194, at *2 (Tex. App.—Houston [1st Dist.] Feb. 5, 2015, pet. ref'd) (mem. op., not designated for publication). Harrah's observation of appellant's speeding was alone sufficient to justify the traffic stop. *See Icke v. State*, 36 S.W.3d 913, 915–16 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (holding officer's observation of defendant's speeding was alone sufficient to justify traffic stop); *see also Markle*, 2015 WL 505194, at *3. Appellant does not challenge this ground.

Appellant asserts that Harrah's testimony was internally contradictory with respect to the timing of the stop. Initially, she notes, Harrah testified that, after "several minutes" of following her, he stopped her because "didn't want to keep

10

going." Yet, "during cross-examination, he insisted that he had waited for the first well-lit parking lot to stop her." And, Harrah added, "I'm seeing if she's impaired." Appellant further asserts that the video shows the cars passing other well-lit parking lots, which counters Harrah's cross-examination testimony about the timing of the stop.

Setting aside that appellant asserted in the trial court that there was no fact issue on which to base an article 38.23 instruction, we note that whether Harrah initiated a traffic stop at what was truly the "first" well-lit parking lot is not material to the legality of the stop. Further, the reasonable suspicion standard is wholly objective; the subjective intent of the officer conducting the investigation is irrelevant. *See Hamal*, 390 S.W.3d at 306. A defendant's right to the submission of a jury instruction under article 38.23(a) is limited to disputed issues of fact that are material to her claim of a constitutional or statutory violation that would render evidence inadmissible. *See Madden*, 242 S.W.3d at 509–10; *Ramjattansingh v. State*, 587 S.W.3d 141, 152 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (holding that timing issue was immaterial to legality of obtaining evidence of intoxication).

Next, appellant complains that Lieutenant Harrah testified that she "drove in a single lane throughout and did not use her turn signals" and that the video shows her driving safely and properly using her turn signal to change lanes.

11

Lieutenant Harrah testified that the "wheels" of appellant's car "would cross over the line" and that the car "wasn't entering—completely entering the other lane, just crossing the line and coming back." Thus, Harrah testified that appellant did not drive in a single lane. And, he consistently testified that appellant's failure to maintain a single lane occurred prior to the video captured by the activation of his dash camera. As such, the video does not raise a fact issue with respect to Harrah's testimony about his observations. *See Hamal*, 390 S.W.3d at 306.

With respect to appellant's use of turn signals, the record does show that Lieutenant Harrah initially testified that he did not observe appellant use her turn signal because she did not turn or change lanes. Rather, he explained: "We didn't turn. It was a complete straight [sic] until we—I activated my lights. Then she turned her right signal on, crossed over the fog line and just drove down the fog line to a parking lot and pulled in." The video captured appellant using her turn signal twice—once to change lanes to pass another car at the beginning of the video and again, as Harrah noted, after he activated his lights. Although Harrah later testified that he was mistaken as to whether appellant had used her turn signal or had changed lanes, he testified that he did not stop her for failing to signal. Rather, he stopped her for speeding and for failing to maintain a single lane.

When, as here, other facts, i.e., speeding alone, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted

12

to the jury because it is not material to the ultimate admissibility of the evidence. *See Madden*, 242 S.W.3d at 510; *Reynosa v. State*, 996 S.W.2d 238, 240 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (holding that, because other facts, i.e., speeding and failing to maintain single lane, were sufficient to justify traffic stop, question of whether defendant stopped at stop sign did not raise issue of material fact and no article 38.23 instruction was necessary); *see, e.g.*, *Perez v. State*, No. 01-94-00749-CR, 1995 WL 389588, at *2 (Tex. App.—Houston [1st Dist.] June 29, 1995, pet. ref'd) (not designated for publication) (holding that, although defendant disputed some facts surrounding stop, he did not dispute critical facts that authorized traffic stop, i.e., speeding, and thus defendant not entitled to article 38.23 instruction); *Flakes v. State*, No. 01-88-00137-CR, 1989 WL 17163, at *2 (Tex. App.—Houston [1st Dist.] Mar. 1, 1989, pet. ref'd) (not designated for publication) (holding unchallenged traffic violations supported stop and thus no article 38.23 instruction required).

Because appellant does not direct us to any evidence in the record raising a material fact issue as to how the evidence was obtained, we conclude that appellant was not entitled to the submission of an article 38.23 instruction. *See* TEX. CODE CRIM. PROC. art. 38.23. Accordingly, we hold that the trial court did not err in not instructing the jury to disregard unlawfully obtained evidence.

We overrule appellant's sole issue.

## Conclusion

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Lloyd and Countiss.

Do not publish.  TEX. R. APP. P. 47.2(b).